CHANDLER, J., for the court.
¶ 1. Billy Millsaps appeals from an order of the Circuit Court of Forrest County dismissing his claim for punitive damages. As the order did not dispose of all the claims before the lower court, the order was not a final judgment from which an appeal could be taken. Therefore, we dismiss this appeal.
FACTS
¶ 2. Billy Millsaps filed a complaint against his employers, Gary Stout and Gary Stout, d/b/a Dixie Glass Company (hereinafter, “Dixie Glass”). Millsaps alleged that he was a participant in Dixie Glass’s employee health insurance plan, and that Dixie Glass deducted health insurance premiums from Millsaps’ pay. Millsaps alleged that Dixie Glass had never purchased health insurance for Mill-saps, but had instead converted Millsaps’ premium payments to Dixie Glass’s own use, causing damages. In addition to the conversion theory, Millsaps alternatively advanced theories of fraud and negligence. Millsaps requested $50,000 in actual damages, $500,000 in punitive damages, and attorney’s fees and costs.
¶ 3. After some discovery, Dixie Glass filed a “Motion for Partial Summary Judgment” on Millsaps’ punitive damages claim. In the motion, Dixie Glass admitted that Millsaps was enrolled in the company’s major medical insurance plan, that insurance for Millsaps was provided at no cost, and that $22.80 per week was deducted from Millsaps’ pay to insure Millsaps’ dependent. Dixie Glass further admitted that its major medical insurance policy lapsed on December 31, 1999. Dixie Glass stated that, upon receiving the insurer’s cancellation notice, Dixie Glass held company-wide meetings with employees to inform them of the cancellation. At the meetings, Dixie Glass offered its employees the option of procuring their own health insurance, or of allowing Dixie Glass to continue deducting premiums from their pay and to provide the same medical benefits previously provided by the lapsed policy. Dixie Glass averred that Millsaps was present at these meetings and agreed to allow the company to continue deductions and pay the medical bills of Millsaps and his dependent. Dixie Glass claimed that it deducted $17.17 from Millsaps’ weekly pay from January 1, 2000, until Millsaps left employment on Septem *854 ber 18, 2000, for a total of $787.30. Dixie Glass stated that it paid $656.91 in medical bills that Millsaps and his dependent incurred during that time. In affidavits, Gary Stout and another employee stated that Millsaps voluntarily entered into the agreement.
¶ 4. In his response to the motion for summary judgment, Millsaps denied attending any employee meetings about the health insurance situation. Millsaps stated that Dixie Glass deducted more than $787.30 from his pay for health insurance. Millsaps did not deny that Dixie Glass had paid $656.91 in medical benefits, but attached allegedly unpaid medical bills showing expenses of $60 for dental work, a statement showing $514.63 for service on November 5, 2000, and a letter from a collection agency, dated September 29, 2000, for a hospital bill of $850.50. In affidavits, Millsaps and his ex-wife averred that they were twice denied medical care for their daughter because Millsaps’ dependent insurance was not valid. They averred that staff at medical clinics called Dixie Glass to verify coverage on Millsaps’ daughter and were told that there was no coverage. They stated that Gary Stout would not allow Millsaps to have a cyst removed from his face due to the lack of insurance. Millsaps averred that there was no insurance in effect when he went to have a tooth pulled.
¶ 5. In rebuttal, Dixie Glass argued that the only bill applicable to Millsaps’ period of employment was the $60 bill for dental work, and that Millsaps had failed to submit that bill to Dixie Glass for payment. Dixie Glass further argued that the statements in Millsaps’ affidavits constituted inadmissible hearsay. In an affidavit, Gary Stout averred that neither he nor anyone else at Dixie Glass ever refused to allow medical treatment of Millsaps or of his daughter.
¶ 6. In a memorandum opinion, the trial court found that the evidence presented a genuine issue of fact of whether Dixie Glass withheld $787.30 from Millsaps’ pay without Millsaps’ permission. The court found that it was undisputed that Dixie Glass paid $656.91 in medical expenses for Millsaps. The court found that, because Dixie Glass told inquiring health care providers that there was no coverage, Dixie Glass had not uttered false statements to providers about the existence of coverage. The court recited the standard for punitive damages, and concluded that Millsaps’ claim was not sufficient to allow the jury to consider an award of punitive damages. On July 26, 2002, the court ■ entered a separate order dismissing the claim for punitive damages with prejudice. On August 9, 2002, Millsaps filed a notice of appeal from the trial court’s order.
LAW AND ANALYSIS
¶ 7. Millsaps’ sole appellate argument is that the court improperly dismissed the punitive damages claim. Mississippi Rule of Civil Procedure 54(b) provides:
Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment. In the absence of such determination and direction, any order or other form of decision, however designated which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the *855 claims or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
¶ 8. The trial court’s dismissal of Mill-saps’ punitive damages claim did not adjudicate Millsaps’ claims for actual damages and attorney’s fees. The trial court never made an expressed determination that there was no just reason for delay, or directed the entry of final judgment as to Millsaps’ claim for punitive damages. As Millsaps’ claims for actual damages and attorney’s fees remained pending in the lower court, and the trial court never made a Rule 54(b) certification, the trial court’s order dismissing the punitive damages claim is interlocutory. Williams v. Delta Reg’l Med. Ctr., 740 So.2d 284, 285(¶ 7) (Miss.1999).
¶ 9. Mississippi Rule of Appellate Procedure 5(a) provides for appeals from an interlocutory orders “if a substantial basis exists for a difference of opinion on a question of law as to which appellate resolution may: (l)[m]aterially advance the termination of the litigation and avoid exceptional expense to the parties; or (2)[p]rotect a party from substantial and irreparable injury; or (3)[r]esolve an issue of general importance in the administration of justice.” Millsaps never sought or obtained permission for an interlocutory appeal. M.R.A.P. 5(a). We observe that Millsaps did file his notice of appeal within the fourteen days allowed for filing a petition for permission for an interlocutory appeal. M.R.A P. 5(a). We find that the question presented in this case does not compel our suspension of the procedural requirements of Rule 5(a) to allow an interlocutory appeal. M.R.A.P. 2(c); see Hobgood v. Koch Pipeline Southeast, Inc., 769 So.2d 838, 841(¶ 13) (Miss.Ct.App. 2000). Therefore, we dismiss this appeal for lack of an appealable final judgment.
¶10. THE APPEAL FROM THE JULY 26, 2002 ORDER OF THE CIRCUIT COURT OF FORREST COUNTY IS DISMISSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C. J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND GRIFFIS, JJ., CONCUR.